No. 21,275.

JOHN KURT, *Plaintiff*, v. B. A. SHUPE et al. (J. C. ELVIN, *Appellant*, J. G. KILLE, *Appellee*), *Defendants*.

SYLLABUS BY THE COURT.

NOTE AND MORTGAGE—*Foreclosure—Defense of Payment.* The evidence abstracted has been examined, and it is held that there was sufficient evidence to sustain the judgment of the court.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed February 9, 1918. Affirmed.

*Donald Muir*, of Anthony, and *W. W. Schwinn*, of Wellington, for the appellant.

*James G. Washbon*, of Harper, *A. L. Noble*, of Winfield, and *J. N. Tincher*, of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered a judgment foreclosing a mortgage on real property in Harper county. That judgment is not questioned. The controversy is between the defendants J. C. Elvin and J. G. Kille. Judgment was rendered in favor of J. G. Kille and against J. C. Elvin, who appeals.

The plaintiff's mortgage was executed by B. A. Shupe and Maude Shupe, and was given to secure the payment of a note for $2,875. After the plaintiff's mortgage had been executed, Frank Burdg became the owner of the real property, and, on October 28, 1914, executed a mortgage thereon to J. C. Elvin for the purpose of securing the payment of $1,208.85. On January 24, 1916, Frank Burdg and wife executed another mortgage to J. G. Kille to secure the payment of a note for $355.24. The mortgage to Kille contained the following recital:

"This mortgage is given subject to a mortgage of $2,875 to A. A. Kurt, and a second mortgage of $1,208.85 in favor of J. C. Elvin."

J. G. Kille filed a cross petition in which he set up the mortgage owned by him and alleged that it was a valid and subsisting lien on the real property, subject only to the lien of the mortgage of the plaintiff, John Kurt. J. C. Elvin likewise filed a cross petition in which he set up the mortgage held by him and alleged that it was a second lien on the real property, subject only to the mortgage of the plaintiff, and superior to the mortgage held by J. G. Kille. Elvin also alleged that the note held by him had been lost. Kille filed an answer to Elvin's cross petition in which Kille denied that the note had been lost and alleged that it had been fully paid and discharged at the time the cross petition was filed. The court found for the defendant Kille, against the defendant Elvin, and rendered judgment in favor of Kille on his mortgage. The court further found that the note sued on by Elvin as a lost note had been paid; that the mortgage held by him had been satisfied by the payment of the note; and that the mortgage was no longer a lien on the real property. The court rendered judgment that Elvin take nothing by this action.

Elvin contends that there was no evidence whatever from which the court could find that the note given to him had been paid, and that no fact was brought out on the trial which justified the court in canceling Elvin's mortgage and advancing Kille's mortgage to second place.

After the mortgage by Shupe and wife had been executed, Elvin in some way became the owner of the property. Burdg bought the property from Elvin, and, in part payment therefor, gave Elvin the $1,208.85 mortgage. Afterward, Elvin, either for himself or for Fred B. Long, repurchased the real property

from Burdg. Burdg did not deal with Long in effecting the sale of the land; he dealt entirely with Elvin. The deed from Burdg and wife to Long was a general warranty deed, and it did not mention any mortgages.

Frank Burdg, the maker of the Elvin and Kille notes and mortgages, testified, in part, as follows:

"I paid one of these mortgages. I paid the $1200.00 one. . . .

"I received this $1200.00 note taken from Elvin. Nothing was said about the note except that it straightened it up. That settled all I owed Mr. Elvin. . . . I gave a chattel mortgage. It was under the same note to secure the same note. I received the chattel back from Mr. Elvin. Mr. Elvin handed it to me, and said that paid it. Paid all I owed him. . . .

"Q. And Mr. Long was to take it subject to the mortgage, was he? A. You mean settle this mortgage?

"Q. Yes. A. Yes, sir. . . .

"Q. Three mortgages, one $2,875, the other $1,208.85. . . . And those mortgages, Long was to take care of those mortgages? A. He was to take care of all but that $355.24.

"Q. He was not to take care of it? A. No, sir.

"Q. And you were to take care of that yourself? A. No, sir, Mr. Elvin was to take care of it. I left the money there to pay it.

. . . . . . . . . . .

"Q. I say, did Elvin ever give it to you? A. He gave me the note and gave me those papers when I paid him the $1,200.00.

. . . . . . . . . . .

"Q. Isn't this a fact, Mr. Burdg, the way the thing was done. You didn't pay anyone anything did you? A. I paid out no money.

"Q. And the agreement between you and Elvin and Long was that you were to convey the land and that Long was to take care of all your debts against the land, wasn't that the agreement—let you out? A. Why, it was this way. I did not owe Long nothing. What paper I had was to Elvin.

"Q. Elvin was the go-between between you and Long? A. He was the man I made the trade with, yes, sir.

. . . . . . . . . . .

"Q. You say Jim Elvin gave you this note—where was he when he gave it to you? A. In his office.

. . . . . . . . . . .

"Q. You were going to move out of Kansas down into Oklahoma? A. Yes, sir.

"Q. And you wanted Swinhart to hold that mortgage against your property until you got to Oklahoma, didn't you? A. I don't know as I have to answer that. I don't think that has anything to do with it.

"By the Court: Answer the question. Do you understand the question?

"A. No, I do not.

"Q. I asked you if you did not want Swinhart to have that mortgage assigned to him and hold it until you got moved into Oklahoma? A. Well, he did that, yes, sir.

"Q. But Swinhart did not have any interest in the chattel mortgage, did he? A. No, sir.

"Q. He did not give Elvin any money? A. No, sir.

"Q. And you requested that assignment be made to Swinhart? A. Yes, sir.

"Q. Why did you want that done? A. Sir?

"Q. Why did you want that done? A. Well, so I could have the stock.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Did you pay in any way except by the deed to Long? A. Why, that was the only way I paid it. I thought that was sufficient.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. I understood you, on direct examination to say, when you got the note from Jim Elvin at Harper he said something to you about the note— about squaring that mortgage. A. Well, he said this way. He said that squared up this $1,200 that I owed him on this chattel and on this $1,200 mortgage that includes that chattel.

"Q. Now, when was it that you had the conversation with him about the Kille mortgage—about paying Kille? A. It was there the day that I was dealing with him on this other land, when they traded. It was mentioned at different times. One time was out at home and another time was in town—talked about it."

Burdg had possession of the note and produced it at the trial.

The evidence above detailed is sufficient to support the finding of the court that the note given to Elvin had been paid and the mortgage discharged. That is the only question presented. Argument concerning what the evidence proves or does not prove is unnecessary.

The judgment is affirmed.